UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:15-cv-66-FDW

| MARSHALL LEE BROWN, JR., | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| vs. | ) | **ORDER** |
| GEORGE T. SOLOMON, ET AL., | ) |  |
| Defendants. | ) |  |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, (Doc. No. 1). On May 28, 2015, this Court entered an order granting Plaintiff *in forma pauperis* status and waiving the initial filing fee. (Doc. No. 3).

**I.   BACKGROUND**

*Pro se* Plaintiff Marshall Lee Brown, Jr., is a North Carolina prisoner incarcerated at the Alexander Correctional Institution in Taylorsville, North Carolina. Plaintiff filed this action on April 29, 2015, pursuant to 42 U.S.C. § 1983, naming as Defendants: (1) North Carolina Department of Public Safety ("NCDPS") Director George T. Solomon; (2) NCDPS Chaplaincy Services Director Betty Brown; (3) NCDPS Chaplaincy Services Director Swindell Edwards; (4) Alexander CI Chaplain Daniel Redding; and (5) Alexander CI Superintendent Susan White. (Doc. No. 1).

Plaintiff alleges that, while incarcerated at Alexander CI, Jehovah's Witness inmates were provided separate faith worship services until mid-2014. This included classes once a week on Sundays in the chapel library, a special annual celebration of Christ's death on April 14, 2014, and a religious faith worship service and lecture on April 26, 2014.

1

After permitting Jehovah's Witnesses to worship for years at Alexander CI, Defendant Redding arbitrarily and indefinitely suspended the Jehovah's Witness worship services. (Doc. No. 1 at 15). On June 30, 2014, a request was made to Redding to reinstate the weekly services but he refused, stating that the NDCPS Religious Resource Guide and Practices Manual ("RRGPM") categorizes Jehovah's Witnesses as Christian-Protestants who do not have to be granted a separate time, meeting place, or specific services. (Doc. No. 1 at 16-17).

The RRGPM incorrectly categorizes Jehovah's Witnesses as Christian-Protestant sect. The three recognized categories of Christians in the RRGPM – Catholics, Protestants, and Eastern Orthodox – share the three common beliefs of God as revealed in Jesus Christ, the Holy Spirit as the third person of the trinity, and salvation through Christ. Jehovah's Witnesses do not believe in the holy trinity doctrine so they should be recognized as a distinct Christian organization with non-traditional beliefs and practices. Jehovah's Witnesses follow the biblical commands that they all speak in agreement, have no division, meet together, and annually celebrate Christ's death. (Doc. No. 1 at 19). The RRGPM states that it is not exhaustive and needs to be reviewed and updated at regular intervals, and that relevant materials from knowledgeable religious authorities should be added to make it more accurate and useable.

Redding's prior provision of separate religious worship services shows that he is conscious that a doctrinal disparity exists between Jehovah's Witnesses and other Christian denominations. (Doc. No. 1 at 18). Redding refused to reinstate Jehovah's Witness services even though he was in the best position to do so, which shows his intent to discriminate.

On February 23, 2015, an informal letter, completed DC-572 form, and extensive factual information were sent to Defendant White requesting that she contact knowledgeable authorities, *i.e.*, the Governing Body of Watchtower Bible & Tract Society. White did not respond but

2

forwarded the materials to Defendant Redding who, in turn, forwarded them to Defendant Brown. Plaintiff does not know whether it was within White's power to take further action or investigate the matter. (Doc. No. 1 at 21).

On March 23, 2015, a memorandum from Defendant Edwards to Brown stated that the DC-572 form is not to be used for existing religious faith groups. Further, "Jehovah's Witnesses is considered as a Christian-Protestant in the RRGPM, therefore there is to be no separate services or meeting time just for them, they are being accommodated according to NCDPS policy." (Doc. No. 1 at 20). Brown and Edwards were the "epicenter" of, and in a position to recognize, the RRGPM policy error and its unconstitutional consequences yet they chose to allow discriminatory religious suppression to continue. (Doc. No. 1 at 21).

Solomon supervises all the named Defendants, which "should keep him aware of the possible legal or Constitutional matters, as well as the Grievance Commission/Resolution Board; and the examiners they appoint." (Doc. No. 1 at 22).

Plaintiff asserts claims under the First Amendment's Free Exercise and Establishment Clauses, the Fourteenth Amendment,[1] and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq., against the Defendants in their individual and official capacities.

Plaintiff seeks to have the RRGPM amended to recognize Jehovah's Witnesses as a distinct Christian organization with non-traditional beliefs and practices, reinstatement of distinct religious worship services once a week, payment of the cost of filing the complaint by Edwards and Brown as nominal damages due to the emotional and religious stress their actions have caused, and other

---

[1] Because Plaintiff's First Amendment rights arise through the due process clause of the Fourteenth Amendment, the Court analyzes this claim as part of his First Amendment claim.

relief that the Court deems just.

## II. STANDARD OF REVIEW

A "court shall dismiss [a prisoner's] case at any time if the court determines that ... the action or appeal ... fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a pro se complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v.

4

Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

### III. DISCUSSION

Plaintiff alleges claims pursuant to RLUIPA and the First Amendment.

RLUIPA provides, in part that no government shall impose a "substantial burden" on the religious exercise of a person residing in or confined to an institution, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005). A plaintiff bears the initial burden of showing that the challenged policy substantially burdens his exercise of his religion. See 42 U.S.C. § 2000cc-2(b); Holt v. Hobbs, 135 S. Ct. 853, 862 (2015). The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009). A "'substantial burden' is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, [] or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quotations, citation, and alterations omitted).

Once the inmate makes a *prima facie* showing, the burden shifts to the government to prove

that "the burden in question is the least restrictive means of furthering a compelling governmental interest." Ozmint, 578 F.3d at 250. "'RLUIPA adopts a . . . strict scrutiny' standard." Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (quoting Lovelace, 472 F.3d at 198 n.8). Under RLUIPA, the court must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter, 544 U.S. at 723 (quotation omitted). "However, 'a court should not rubber stamp or mechanically accept the judgments of prison administrators.' . . . Rather, due deference will be afforded to those explanations that sufficiently 'take[] into account any institutional need to maintain good order, security, and discipline.'" Couch, 679 F.3d at 201 (quoting Lovelace, 472 F.3d at 190).

The First Amendment of the Constitution states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. Amend I. The First Amendment applies to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). For government conduct to survive scrutiny under the Establishment Clause, "(1) it must have a secular purpose; (2) its principal or primary effect must neither advance nor inhibit religion; and (3) it must not foster an excessive government entanglement with religion." Buxton v. Kurtinitis, 862 F.3d 423, 432 (4th Cir. 2017) (citing Lemon v. Kurtzman, 403 U.S. 602, 612–13 (1971)); see also Madison v. Riter, 355 F.3d 310, 316 (4th Cir. 2003). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological

6

interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). In deciding whether a defendant's actions can be sustained as reasonably related to legitimate penological interests, the court must consider the following four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; (2) whether there are alternative means of exercising the right in question that remain open to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) whether ready alternatives exist which accommodate the right and satisfy the penological interest. See Turner, 482 U.S. at 89-90. Claims brought under the First Amendment are subject to a less demanding standard of proof than claims brought under RLUIPA, with RLUIPA claims requiring "strict scrutiny instead of reasonableness." See Lovelace, 472 F.3d at 199 n.8.

The Court finds that, accepting Plaintiff's allegations as true and construing all inferences in his favor, his RLUIPA and First Amendment claims are not clearly frivolous and therefore survive initial review.

## IV. CONCLUSION

For the reasons stated herein, the Court finds that Plaintiff's claims survive initial screening by the Court in that they are not clearly frivolous.

**IT IS, THEREFORE, ORDERED that:**

1. Plaintiff's action survives initial review under 28 U.S.C. § 1915(e).

2. **IT IS FURTHER ORDERED THAT** the Clerk is directed to mail summons forms to Plaintiff for Plaintiff to fill out and return for service of process on Defendants. Once the Court receives the summons forms, the Clerk shall then direct the U.S. Marshal to effectuate service on Defendants. The Clerk is

respectfully instructed to note on the docket when the forms have been mailed to Plaintiff.

Signed: September 15, 2017

Frank D. Whitney
Chief United States District Judge