UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:15-cv-66-GCM

| | |
|---|---|
| MARSHALL LEE BROWN, JR., <br><br> Plaintiff, <br><br> v. <br><br> GEORGE T. SOLOMON, et al. <br><br> Defendants. | **BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS** |

Plaintiff Marshall Lee Brown, Jr. respectfully submits this brief in support of his motion for attorneys' fees and costs under 42 U.S.C. § 1988.

## BACKGROUND

Marshall Lee Brown, Jr. is a Jehovah's Witness who is currently incarcerated in a North Carolina state prison. He brought this lawsuit after the North Carolina Department of Public Safety categorically refused to permit Jehovah's Witness religious services in State prisons. Compl. (Dkt. 1) at 15–17. The Department's official policy, as set out in its Religious Services Manual, was that the Jehovah's Witness faith is a subset of the Christian Protestant faith. *See id.* Thus, according to the Department's policy, Jehovah's Witnesses were required to either attend the regularly scheduled Christian Protestant service—a requirement that undermined one of their core beliefs—or attend none at all. *See id.*

Mr. Brown challenged the Department's policy as violating the Free Exercise Clause (through 42 U.S.C. § 1983) and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq*. His lawsuit asked the Court to do three things: (1) order the Department to amend its policy to recognize the Jehovah's Witness faith as a distinct faith; (2) reinstate its

inmates' ability to schedule Jehovah's Witness religious services with approved volunteers; and (3) reimburse Mr. Brown's filing fees. *See* Compl. (Dkt. 1) at 9.

More than 4 years later, the lawsuit ended in a Consent Judgment and Decree that accomplished everything Mr. Brown set out to achieve. The Consent Judgment and Decree ordered the Department to: (1) amend its policy to recognize the Jehovah's Witness faith as a distinct faith; (2) reinstate its inmates' ability to schedule Jehovah's Witness religious services with approved volunteers; and (3) reimburse Mr. Brown's filing fees. *See* Consent Judgment and Decree (Dkt. 74) ¶¶ 8–12.

In light of this outcome, there is no question that Mr. Brown prevailed in this litigation. Consequently, Mr. Brown now seeks to recover his reasonable attorneys' fees and expenses under Section 1988.

While Mr. Brown litigated the bulk of this case *pro se*, the undersigned attorneys from Poyner Spruill LLP appeared on Mr. Brown's behalf in January 2019, less than 60 days before the case was set for trial. *See* Notices of Appearances (Dkt. 52–54). Counsel immediately began researching and evaluating the complex legal, religious, and factual issues in the case, while simultaneously preparing for trial by, among other things, interviewing multiple fact witnesses and potential experts. *See* Durnovich Decl. ¶ 13.

In April 2019, the parties began intensive settlement negotiations. This ten-month process ultimately resulted in Mr. Brown's successful negotiation of the Consent Judgment and Decree that provides him the relief he sought from the beginning of this case. *Id.* ¶¶ 14–15.

In total, Poyner Spruill attorneys and staff devoted 136.1 hours of time to reaching this successful outcome. *Id.* ¶ 16. At standard rates, this work would amount to attorneys' fees of $42,943.50. *Id.* ¶ 17. However, because the Prison Litigation Reform Act, 42 U.S.C. § 1997e, caps

2

the hourly rates available in this case, Mr. Brown's motion seeks to recover only $29,577.60 in fees plus $902.93 in costs.

While the undersigned agreed to represent Mr. Brown pro bono in this case, Mr. Brown's fee obligation does not affect the availability of a statutory fee award. *See infra* at 7. Moreover, in keeping with the spirit of counsel's pro bono endeavor, Poyner Spruill LLP has committed to apply any fee award in this case to either (a) making a charitable contribution to a non-profit legal service provider, or (b) financing the costs and expenses (non-attorneys' fees) of the firm's future pro bono work. *See* Durnovich Decl. ¶ 2. If the Court orders an award, Poyner Spruill will defer to the Court's judgment on which of these options, if either, is most appropriate.

For the reasons discussed below, Mr. Brown is entitled to a full award of $29,577.60 in fees and $902.93 in litigation expenses.

## **ARGUMENT**

**I.    Mr. Brown is entitled to an award of his reasonable attorneys' fees.**

**A.    Mr. Brown is a prevailing party under Section 1988.**

A prevailing party in a civil rights case brought to enforce a constitutional guarantee is entitled to recover reasonable attorneys' fees. 42 U.S.C. § 1988(b). A plaintiff "prevails" when its claims result in relief that "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Mercer v. Duke Univ.*, 401 F.3d 199, 203 (4th Cir. 2005). The "material alteration" justifying an award may come in the form of a voluntary consent decree. *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 604 (2001) (explaining that "settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees" even without any "admission of liability by the defendant").

3

A prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1982) (internal quotation omitted).

Here, a simple comparison of Mr. Brown's complaint and the Consent Judgment and Decree demonstrates that Mr. Brown is the prevailing party:

- The complaint asked the Court to do three things: (1) order the Department to amend its policy to reflect that the Jehovah's Witness faith as a distinct faith; (2) reinstate its inmates' ability to schedule Jehovah's Witness religious services with approved volunteers; and (3) reimburse Mr. Brown for his filing fees. *See* Compl. (Dkt. 1) at 9.

- The Consent Judgment and Decree orders the Department to do three things: (1) amend its policy to reflect that the Jehovah's Witness faith is a distinct faith; (2) amend its policy to reflect that inmates may schedule Jehovah's Witness religious services with approved volunteers; and (3) reimburse Mr. Brown for his filing fees. *See* Consent Decree (Dkt. 74) ¶¶ 8–12.

In light of this success, Mr. Brown is indisputably the "prevailing party" under 42 U.S.C. § 1988(b).

### B. Mr. Brown's fee request also satisfies the Prisoner Litigation Reform Act.

In cases brought by prisoners challenging prison conditions, the Prisoner Litigation Reform Act imposes similar requirements that the fee be "directly and reasonably incurred in proving an actual violation of the plaintiff's rights" and that "the amount of the fee is proportionately related to the court-ordered relief for the violation." 42 U.S.C. § 1977e(d).

It is not entirely clear how this PLRA provision applies when the litigation ends in a consent decree. The undersigned has not identified any Fourth Circuit decision on this issue, and district

4

courts within this circuit have reached somewhat inconsistent results. *Compare Duvall v. O'Malley*, No.ELH-94-2541, 2014 WL 1379787 (D. Md. April 7, 2014) (refusing to award fees because prisoner litigant was not a "prevailing party" under Section 1988, and, alternatively, because consent decree did not show "actual violation" under PLRA where it included a "no admission of liability" clause), *with Scott v. Clarke*, No. 3:12-CV-00036, 2016 WL 452164, at *18 (W.D. Va. Feb. 5, 2016) (awarding $1.5 million in attorneys' fees to prisoner litigant and finding PLRA's "actual violation" requirement satisfied even though matter was resolved through a settlement agreement).

The better approach is that the PLRA allows recovery of fees where the matter concludes in a consent decree. This view is supported by the plain text of the PLRA and strong policy reasons.

First, PLRA's plain text "does not require that the fee be incurred in *having proved* an actual violation of the plaintiff's rights, only that the fee be incurred in *proving* a violation." *Laube v. Allen*, 506 F. Supp. 2d 969, 980 (M.D. Ala. 2007) (emphasis in original). That distinction is meaningful:

> "Proving," as used in the statute, is a present participle, which denotes action that is continuing or progressing, as distinct from "having proved," a perfect participle that denotes completion. By employing the present participle rather than the perfect participle, Congress left room for prevailing plaintiffs to recover attorney's fees for work recognized to be part of the *process* of proving an actual violation even if that process ends in a court-approved consent decree rather than a judgment of liability. If Congress had wanted to eliminate altogether attorney's fees for prevailing parties when the case ends in consent decree rather than a judgment on the merits, it could have easily required that such fees be directly and reasonably incurred in *having proved*, rather than in *proving*, an actual violation of the plaintiff's rights.

*Id.* at 980 (emphasis in original).

Here, all the fees and costs sought were reasonably incurred in "the *process* of proving an actual violation," such that a jury verdict on the merits ultimately proved unnecessary. *Id.*

5

Second, as a policy matter, interpreting the PLRA to limit fees awards to cases going to trial would be unsound. After all, the law "encourages voluntary settlement of disputes"—it does not penalize parties for doing so. *Janvey v. Romero*, 883 F.3d 406, 415 (4th Cir. 2018) (explaining that the law "encourages voluntary settlement" because doing so "spares the parties substantial costs in terms of time and money" and "lightens the docket of a resource-strapped judicial system"). If the PLRA was read to require a trial, then "plaintiffs with highly meritorious claims" would be incentivized to refuse settlement and instead "drag[ ] defendants and courts through the expensive and time-consuming process of a full-blown trial." *Allen*, 506 F. Supp. 2d at 980 ("It is difficult to believe that Congress intended to discourage efficient settlements of meritorious claims.").

Again, this case is a prime example of why such a reading would be imprudent: Mr. Brown obtained precisely the relief he requested at trial, so a trial on the merits would have been a waste of both the parties' and the Court's resources. Congress did not intend to encourage such waste.

In sum, Mr. Brown's fee request satisfies the PLRA.

**C. Mr. Brown seeks reasonable attorneys' fees.**

Federal courts employ the familiar lodestar method to calculate the reasonableness of attorneys' fees under the civil rights fee-shifting statutes. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar is derived from "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435.

Here, Mr. Brown seeks to recover the lodestar amount of $29,577.60 in attorneys' fees. The full amount should be awarded because both the hours worked and the rate charged are reasonable.

6

Case 5:15-cv-00066-MR   Document 76   Filed 03/18/20   Page 6 of 12

### 1. Counsel's pro bono status does not affect the availability of a fee award.

The pro bono nature of counsel's engagement has no impact on the availability of fees under Section 1988. *See Brinn v. Tidewater Transp. Dist. Comm'n*, 242 F.3d 227, 234–35 (4th Cir. 2001) ("[C]ourts have consistently held that entities providing pro bono representation may receive attorney's fees where appropriate, even though they did not expect payment from the client."). This is because awarding the fees of pro bono counsel "promotes the enforcement of the underlying statutes as much as an award to privately retained counsel." *Id.*

Indeed, the North Carolina Rules of Professional Conduct make clear that "the award of statutory attorneys' fees in a case originally accepted as pro bono would not disqualify such services from inclusion under this [pro bono] section." N.C. Rules of Professional Conduct, Rule 6.1, *Voluntary Pro Bono Publico Service*, cmt. 4. While not required, the Rules of Professional conduct "encourage[ ]" lawyers who receive fees in pro bono matters "to contribute an appropriate portion of such fees" to charitable causes. *Id.*

Here, Mr. Brown's counsel has committed to do exactly that: Poyner Spruill will apply 100 percent of any fee award to either (a) making a charitable contribution to a non-profit legal service provider, or (b) financing the costs and expenses (non-attorneys' fees) of the firm's future pro bono work. *See* Durnovich Decl. ¶ 2.

Accordingly, counsel's pro bono status should have no effect on the Court's consideration.

### 2. Counsel's hours are reasonable.

Mr. Durnovich's declaration describes the reasonable hours of work that Mr. Brown's litigation team devoted to this case. *See* Durnovich Dec. ¶¶ 4–18. More specifically, Exhibit A to Mr. Durnovich's declaration sets forth the specific tasks performed by each timekeeper on a daily

basis, the amount of time spent on each task, and the respective fee for each time entry. These materials were compiled using contemporaneously created time records. *See* Durnovich Decl. ¶ 6.

As those records reflect, the work in this case was divided primarily into two phases: trial preparation and settlement efforts. Durnovich Decl. ¶ 12.

Mr. Brown's counsel appeared in this case on January 10, 2019, less than 60 days before the case was set for trial. *Id.* ¶ 13. Given that short time frame, counsel was forced to work quickly and intensively to familiarize themselves with this case while also preparing for trial. *Id.*

In April 2019, the parties shifted their focus to pursuing settlement. *Id.* ¶ 14. Over the next months, the parties negotiated a complex agreement to revise and implement new state-wide policies concerning the exercise of religious freedoms within the State's prisons. This process required significant attention from Mr. Brown's counsel, not only because of the complexity and importance of the settlement, but also because of the Department's repeated delays. *See* Durnovich Decl. ¶¶ 14–15.

Poyner Spruill's paralegals, law clerks, and support staff also committed time and resources to this matter. *See Herold v. Hajoca Corp.*, 864 F.2d 317, 322 (4th Cir. 1988) (paralegal and law clerk time is "to be included in attorney's fees"). Mr. Durnovich's declaration explains the work performed by law clerks, paralegals, and support staff for this case. *See* Durnovich Decl. ¶ 11. These tasks would have been performed by lawyers if not by those individuals. *Id.*

In total, Poyner Spruill incurred 136.1 hours of legal time in the representation of Mr. Brown. All of these hours were reasonably incurred in representing Mr. Brown and obtaining the successful resolution of this case. Therefore, the total of 136.1 hours of work is recoverable under Section 1988.

8

Case 5:15-cv-00066-MR   Document 76   Filed 03/18/20   Page 8 of 12

### 3. Counsel's rates are well below market.

Mr. Brown's counsel's requested rates are also reasonable. Under the PLRA, hourly rates are capped at "150 percent of the hourly rate established under [the Criminal Justice Act] for payment of court-appointed counsel." 42 U.S.C. § 1997e(d)(3). Thus, the PLRA rates applicable here are as follows:

| *If services were performed between…* | *CJA rate*[1] | *PLRA rate* |
|---|---|---|
| 01/01/2020 to present | $152 | $228 |
| 02/15/2019 through 12/31/2019 | $148 | $222 |
| 03/23/2018 through 02/14/2019 | $140 | $210 |

As Exhibit A to Mr. Durnovich's declaration shows, counsel applied the appropriate PLRA rates—ranging from $210 per hour to $228 per hour—to the daily time entries kept in this case.[2] Under these PLRA rates, Mr. Brown seeks to recover a total of $29,577.60 in fees.

When requested rates are in line with community rates for comparable work, the requested rates are presumptively reasonable. *See Blum*, 465 U.S. at 895 n.11. Here, the PLRA rates are substantially *below* market rates. *See* Shelton Decl. ¶¶ 10–11. Therefore, there is no question that counsel's requested rates are reasonable.

\* \* \*

In sum, the lodestar amount of fees Mr. Brown's counsel incurred in successfully obtaining the Consent Judgment and Decree is $29,577.60. That amount is reasonable and should be awarded in full.

---

[1] *See* CJA Guidelines § 230.16(A), *available at* https://www.uscourts.gov/rules-policies/judiciary-policies/cja-guidelines/chapter-2-ss-230-compensation-and-expenses.

[2] "The CJA does not establish a rate for paralegal time, but multiple courts have concluded that paralegals may seek the same maximum rate as attorneys." *Coward v. Robinson*, No. 1:10-cv-147, 2017 WL 5195868, at \*3 (E.D. Va. Nov. 9, 2017) (citing *Perez v. Cate*, 632 F.3d 553, 554 (9th Cir. 2011), *and Duvall v. O'Malley*, No. ELH–94–2541, 2016WL 3523682, at \*14 (D. Md. June 28, 2016)).

9

**II.     Mr. Brown is also entitled to an award of his reasonable litigation expenses.**

Under Section 1988, a prevailing plaintiff is also "entitled to compensation for reasonable litigation expenses." *Daly v. Hill*, 790 F.2d 1071, 1084 (4th Cir. 1986). Recoverable expenses include any expenses that are usually charged to fee-paying clients. *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989).

As described above, Mr. Brown is the prevailing party in this litigation. Therefore, Mr. Brown seeks recovery of reasonable litigation expenses in the total amount of $902.93. Attached as Exhibit B to Mr. Durnovich's declaration is a spreadsheet that provides an itemized account of all expenses requested by Mr. Brown. Those expenses were necessarily and reasonably incurred in the course of providing representation to Mr. Brown. *See* Durnovich Decl. ¶¶ 20–21.

Consequently, Mr. Brown is entitled to compensation for his litigation expenses in the total amount of $902.93.

## CONCLUSION

For the reasons set forth above, Mr. Brown respectfully requests that the Court approve attorneys' fees in the amount of $29,577.60 and litigation expenses and costs in the amount of $902.93.

Respectfully submitted this the 18th day of March, 2020.

          **POYNER SPRUILL LLP**

          By:   s/ John Michael Durnovich
                  John Michael ("J.M.") Durnovich
                  N.C. State Bar No. 47715
                  Andrew H. Erteschik
                  N.C. State Bar No. 35269
                  Nathaniel C. Zinkow
                  N.C. State Bar No. 53778
                  301 South College Street, Suite 2900
                  Charlotte, NC  28202
                  Telephone: 704.342.5344
                  Facsimile: 704.342.5264
                  jdurnovich@poynerspruill.com
                  aerteschik@poynerspruill.com
                  nzinkow@poynerspruill.com

                  ATTORNEYS FOR PLAINTIFF
                  MARSHALL LEE BROWN, JR.

## CERTIFICATE OF SERVICE

  I hereby certify that I have this day electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel and parties of record as follows:

    Norlan Graves
    N.C. Department of Justice
    P.O. Box 629
    Raleigh, NC 27602-0629
    ngraves@ncdoj.gov

This the 18th day of March, 2020.

      **POYNER SPRUILL LLP**

    By: s/ John Michael Durnovich
      John Michael ("J.M.") Durnovich
      N.C. State Bar No. 47715
      301 South College Street, Suite 2900
      Charlotte, NC 28202
      Telephone: 704.342.5344
      Facsimile: 704.342.5264
      jdurnovich@poynerspruill.com

      ATTORNEYS FOR PLAINTIFF
      MARSHALL LEE BROWN, JR.